Brooke v. Baker.

## George W. Brooke v. B. F. Baker.

1. GRAIN—*upon whom damage to, should fall.* Where by contract grain of a particular grade and weight is to be delivered at a certain place, the loss arising from deterioration and shrinkage should be borne by the consignee where such deterioration and shrinkage takes place after arrival at the place of delivery, it appearing that such consignee did not cause such grain to be inspected within a reasonable time after its arrival.

Action of assumpsit. Appeal from the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the May term, 1905. Affirmed. Opinion filed November 24, 1905.

E. D. RIDDLE and KERRICK & BRACKEN, for appellant.

WELTY, STERLING & WHITMORE and OWEN & OWEN, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in assumpsit by appellant against appellee, to recover the amount of overdraft advanced on a car-load of corn shipped by appellee, a grain buyer at Glen Avon, Illinois, to appellant, a grain dealer doing business

at West Nashville, Tennessee. The cause was tried by a jury and a verdict and judgment rendered for the defendant, to reverse which the plaintiff appeals. The pleadings consist of the common counts and general issue.

The facts involved are substantially as follows: During May, 1902, through a broker who was acting for both parties, appellant, Brooke, bought of appellee, Baker, a car of No. 3 mixed corn at fifty-nine cents per bushel to be shipped to West Nashville, Tennessee, settlement therefor to be made according to West Nashville weights and inspection. The corn was shipped May 21st from Glen Avon and arrived at West Nashville about May 27th. By the terms of the bill of lading, the corn was consigned to the order of Baker at West Nashville, notice of its arrival to be given Brooke. Baker, on the following day, drew upon Brooke for $450, attached the bill of lading to the draft and deposited the same with his banker at LeRoy, Illinois, by whom it was forwarded to West Nashville for collection, in the regular course of business. There is evidence tending to show that when it left Glen Avon the car contained 818 bushels and twenty-two pounds of corn which was dry and in good condition generally. Upon its arrival at West Nashville on May 26th, the carrier at once notified the Steel Elevator Company which handled all grain shipped to and by Brooke at and from West Nashville. The evidence further shows that it was the custom of the inspector at West Nashville to inspect and weigh all grain received not later than the day following its arrival there. For some reason the inspector for the elevator company, whose duty it was to inspect all corn stored by it, failed to inspect the corn, which in the meantime remained in the custody of the carrier, until on or about June 3rd, when it was found to be hot and discolored, whereby it had lost materially in weight, failed to grade and was rendered unmerchantable except as damaged corn. Brooke at once notified Baker of the condition of the corn, and a number of letters and telegrams passed between them relative to the better way to handle the corn so that it might grade. The corn was

not unloaded from the car until June 12th, when it was placed in the elevator, where it remained until August 13th when after being cleaned and dried, Brooke sold the same for $320.75.

When the draft for the corn was presented to Brooke, he refused to pay the same, whereupon it was returned to appellee. On June 21st, he wrote to Baker stating that the draft had been returned by mistake and that if he, Baker, would send it back it would be paid. In accordance with such request the draft was again presented to Brooke and paid, by one of his clerks, as he claims, by mistake.

Appellant seeks to recover the difference between the amount of the draft, with interest, and the sum realized by him for the corn, together with sundry expenses claimed to have been incurred by him in handling and disposing of the same, amounting in all to about the sum of $245.34.

The evidence shows that the corn was in dry and in good condition when loaded; that it was in transit for but about five days; and that after it arrived at West Nashville, it was permitted to remain on track without attention for some eight days, during which time the weather was damp and rainy.

The jury was therefore warranted by the evidence in finding that the damages to the corn and the loss in weight was the result of the failure to have the grain unloaded and cared for within a reasonable time after its arrival at destination. It is clear that the loss should be borne by the party to whose neglect it was due. The determination of this question is decisive of the case.

Appellant contends that it was not his duty under the contract to have it inspected, either promptly or otherwise, while appellee contends that it was the duty of appellant upon receiving notice of the arrival of the corn to have used ordinary care to have the same inspected, graded and cared for.

In the absence of any proof of trade, custom or usage in similar transactions to the contrary, we are disposed to construe the contract in question as meaning and intending

that the grain to be furnished thereunder should be of such kind and quality as ordinarily graded No. 3 mixed at West Nashville; that any question as to whether it did so grade was, under the contract, to be determined by the inspection of an official inspector at West Nashville. Baker did not agree to furnish corn which had been pronounced upon inspection at West Nashville to be of requisite grade, but such only as would so grade. The notice by the carrier to Brooke of the arrival of the corn was in effect a tender to him by Baker of the grain, as a compliance with the contract. We think it then became incumbent upon Brooke to ascertain, by inspection, if he so desired, whether or not it was of the grade or quality called for by the contract. It was not necessary in order to have done so, that the corn should have been in his possession or control. The evidence shows that it was customary to inspect all grain received at the elevator before it was unloaded and while in the possession and control of the carrier. If, upon official inspection, Brooke learned that the grain did not grade satisfactorily, it then became his duty to notify Baker of such fact and afford him an opportunity to act in the matter. We are, therefore, of opinion that the damage to the corn was the result of the negligence of Brooke, and that he should bear the loss occasioned thereby. The court properly instructed the jury upon this theory and refused such of appellant's instructions as indicated a contrary rule.

Appellant further contends that the court erred in admitting evidence as to the condition of the corn when shipped. One of his instructions, not numbered, which was properly modified by the court in another particular and given, expressly recognized the competency of such evidence, and he cannot now complain.

Upon the theory that it was the duty of appellant, under the contract, to have the corn inspected within a reasonable time after its arrival, the so-called expert testimony as to the effect of delay and the weather upon corn generally, was competent, and the court did not err in admitting the same.

B. & N. Ry., Electric & Heating Co. v. Koss.

Appellee's third instruction tells the jury that if they believe the corn was "in good condition" when shipped, and they further "find" that plaintiff failed to have it inspected and unloaded within a reasonable time, and that it thereby became damaged, they should find for the defendant. It is insisted that the instruction is erroneous in that the jury were permitted to give any definition they chose to the words "good condition," and in the use of the word "find" instead of "believe." We are satisfied that the jury must have understood the expression "in good condition" to mean such quality and condition that it would have graded upon inspection as No. 3 mixed. The criticism of the use of the word "find" instead of "believe" is captious. There being no prejudicial error in the record, the judgment of the Circuit Court should be and is affirmed.

*Affirmed.*